No. 24-7141

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

MEDIA MATTERS FOR AMERICA, *et al.*,
*Plaintiffs-Appellees*,

v.

MISSOURI ATTORNEY GENERAL ANDREW BAILEY,
*Defendant-Appellant.*

Appeal from the United States District Court for the District of
Columbia, Hon. Amit P. Mehta, No. 24-cv-00147

## BRIEF FOR APPELLANT MISSOURI ATTORNEY GENERAL

**ANDREW BAILEY**
Attorney General of Missouri

**JOSHUA M. DIVINE**
Solicitor General

**REED C. DEMPSEY**
Deputy Solicitor General

207 W. High St.
Jefferson City, Missouri 65101
Phone: (573) 751-8870
Fax: (573) 751-0774

*Counsel for Appellant-Defendant*
*Attorney General of Missouri*
*Andrew Bailey*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.     Parties and Amici

Media Matters for America and Eric Hanonoki are plaintiffs in the district court and appellees in this court.

Andrew Bailey, in his official capacity as the Attorney General of Missouri, is the defendant in the district court and appellant in this court.

Kenneth Warren Paxton, Jr. in his official capacity as Attorney General of the State of Texas is also a defendant in the district court and has a separate appeal before this Court.

No amici have appeared in this matter as of this filing.

## B.     Rulings Under Review

Attorney General Bailey appeals the August 22, 2024 order of the United States District Court for the District of Columbia (J. Mehta), which granted a preliminary injunction preventing Attorney General Bailey from continuing to participate in his existing state-court judicial proceeding against Media Matters over violations of state law.   *See* R.Doc.70; App.288.

## C. Related Cases

There is currently before this Court an appeal by Attorney General Paxton, No. 24-7059, of the district court's (Mehta, J.) separate preliminary injunction order, entered April 12, 2024. That appeal arises from the same underlying case, No. 1:24-00147-APM. Attorney General Paxton's appeal was argued before this Court on Wednesday, November 20, 2024. No ruling has been issued.

Attorney General Bailey's appeal raises a number of issues not raised by Attorney General Paxton's appeal.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES . .................................................................................i

INTRODUCTION ...............................................................1

JURISDICTIONAL STATEMENT ....................................3

ISSUES PRESENTED ........................................................3

STATUTES AND REGULATIONS ....................................4

STATEMENT OF THE CASE ............................................4

   I. Factual Background of the Investigation........................4

   II. Procedural History ......................................................9

      A. The Attorney General issues a CID and brings a state-court enforcement proceeding. ...................9

      B. Media Matters violates Missouri law. .....................11

      C. Plaintiffs consent to personal jurisdiction in Missouri but then sue the Attorney General in D.C. court. ...........12

SUMMARY OF THE ARGUMENT ..................................15

STANDARD OF REVIEW.................................................19

ARGUMENT ....................................................................19

   I. *Younger* Abstention Applies While State Court Proceedings Are Pending. .....................................19

      A. The Missouri court proceeding "touch[es] on a state court's ability to perform its judicial function."........21

      B. The state court proceeding is a "civil enforcement proceeding."...........................................24

   II. The District Court Erred in Finding That D.C. Federal Courts Have Personal Jurisdiction over the Missouri Attorney General..................................31

A. Attorney General Bailey is not a "person" within the meaning of the D.C. Code. ........................................................ 32

B. Hiring a process server for a state court petition is not "transacting business" in D.C. ................................................. 36

C. Merely hiring a process server is not tortious activity. ........... 41

III. Plaintiffs Cannot Establish a Justiciable, Ripe Injury, Nor the Absence of an Adequate Remedy at Law. ..................................... 45

A. Plaintiffs' assertion of injury fails as a matter of law and is self-defeating. .......................................................... 46

B. The state court proceeding provides an adequate remedy. ..... 49

C. Media Matters' case is not ripe. ............................................. 53

IV. The District Court Erred in Finding That Plaintiffs Met the Four-Factor Test For Entering a Preliminary Injunction. ............. 55

A. Plaintiffs are unlikely to succeed on the merits. ...................... 55

1. Plaintiffs were not engaged in protected speech. ............... 56

2. Plaintiffs did not establish that they were chilled. ............ 58

3. Plaintiffs cannot establish causation. ................................ 58

B. The district court erred in finding that Plaintiffs established irreparable harm, balance of the equities, and that the public interest favored preliminary relief. ................. 65

CONCLUSION ....................................................................... 67

CERTIFICATE OF COMPLIANCE ...................................... 68

CERTIFICATE OF SERVICE ................................................. 68

# TABLE OF AUTHORITIES

**Cases**            Page(s)

*Aaron v. O'Connor*,
914 F.3d 1010 (6th Cir. 2019) ............................................................... 24

*Alexander v. S.C. State Conf. of the NAACP*,
144 S. Ct. 1221 (2024) ........................................................................ 60

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) .............................................................. 55

*Backpage.com, LLC v. Hawley*,
No. 4:17-CV-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017)
....................................................................1, 21, 22, 23, 24, 25, 29

*Belle Fourche Pipeline Co. v. United States*,
751 F.2d 332 (10th Cir. 1984) .............................................................. 54

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
582 U.S. 255 (2017) .............................................................................. 31

*Cameron v. Johnson*,
390 U.S. 611 (1968) .............................................................................. 47

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014) ................................................................ 65

*Dyson v. Dutko Ragen Homes & Invs.*,
21-CV-02280 (APM), 2022 WL 1294484
(D.D.C. Apr. 27, 2022) ......................................................................... 44

*Env't Rsch. Int'l, Inc. v. Lockwood Greene Engineers, Inc.*,
355 A.2d 808 (D.C. 1976) ............................................................... 37, 40

*Everett v. Vance*,
685 S.W.3d 495 (Mo. App. W.D. 2023) ................................................ 12

*Farah v. Esq. Mag.*,
736 F.3d 528 (D.C. Cir. 2013) .............................................................. 56

*Food & Water Watch, Inc. v.* Vilsack,
808 F.3d 905 (D.C. Cir. 2015) ...............................................19

*Forras v. Rauf,*
812 F.3d 1102 (D.C. Cir. 2016) ..............................................37

*Google, Inc. v. Hood,*
822 F.3d 212 (5th Cir. 2016) ..................................................54

*Gravelin v. Porier,*
77 Mont. 260 (1926) ...............................................................13

*Holder v. Haarmann & Reimer Corp.,*
779 A.2d 264 (D.C. 2001) ......................................................36

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.,*
677 F. Supp. 2d 195 (D.D.C. 2010) ..................................44, 45

*Houston Cmty. Coll. Sys. v. Wilson,*
595 U.S. 468 (2022) .....................................................49, 56, 58

*Huffman v. Pursue, Ltd.,*
420 U.S. 592 (1975) ...............................................................20

*Huisha-Huisha v. Mayorkas,*
27 F.4th 718 (D.C. Cir. 2022) ...............................................19

*J. & W. Seligman & Co. Inc. v. Spitzer,*
No. 05CIV.7781, 2007 WL 2822208 (S.D.N.Y. Sept. 27, 2007) ...........20

*JMM Corp. v. District of Columbia,*
378 F.3d 1117 (D.C. Cir. 2004) ......................................19, 47

*Juidice v. Vail,*
430 U.S. 327 (1977) .....................................................21, 22, 23

*Keeton v. Hustler Magazine,*
465 U.S. 770 (1984) ...............................................................42

*Kentucky v. Graham,*
473 U.S. 159 (1985). ..............................................................35

*Kwok Sze v. Johnson,*
  172 F. Supp. 3d 112 (D.D.C. 2016) ...................................... 33

*Lans v. Adduci Mastriani & Schaumberg L.L.P.,*
  786 F. Supp. 2d 240 (D.D.C. 2011) ...................................... 41

*Leroy v. Great W. United Corp.,*
  443 U.S. 173 (1979) .............................................................. 23

*Lupin Pharmaceuticals, Inc. v. Richards,*
  No. 15-1281, 2015 WL 4068818 (D. Md. July 2, 2015) ................. 30, 31

*McDonnell v. United States,*
  579 U.S. 550 (2016) .............................................................. 34

*Middlesex Cnty. Ethics Comm. v. Garden State B. Ass'n,*
  457 U.S. 423 (1982) .............................................................. 29

*Moncrief v. Lexington Herald-Leader Co.,*
  807 F.2d 217 (D.C. Cir. 1986) ...................................... 41, 42, 43

*Mouzavires v. Baxter,*
  434 A.2d 988 (D.C. 1981) ............................................ 38, 39, 40

*Mt. Healthy City School District Board of Education v. Doyle,*
  429 U.S. 274 (1977) .............................................................. 60

*Murthy v. Missouri,*
  603 U.S. 43 (2024) ................................................................ 46

*Nasdaq Stock Mkt. LLC v. SEC,*
  38 F.4th 1126 (D.C. Cir. 2022) ........................................... 33

*Natl. Farmers Union Ins. Companies v. Crow Tribe of Indians,*
  471 U.S. 845 (1985) ...................................................... 46, 52

*Natl. Park Hosp. Ass'n v. Dept. of,*
  *Int.*, 538 U.S. 803 (2003) .................................................... 46

*New Eng. Carpenters Pension Fund v. Haffner,*
  391 S.W.3d 453 (Mo. App. S.D. 2012) ................................. 10

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ................................................ 18, 56, 58, 59, 60, 61

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................... 66

*Novack v. Nat'l Hot Rod Ass'n*,
  247 Md. 350 (1967) ................................................................... 38

*Novartis Corp. v. FTC*,
  223 F.3d 783 (D.C. Cir. 2000) .................................................. 56

*Pennzoil Co. v. Texaco*, Inc.,
  481 U.S. 1 (1987) ................................................................ 24, 50

*Ports Petroleum Co. Inc. of Ohio v. Nixon*,
  37 S.W.3d 237 (Mo. 2001) ......................................................... 7

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ................................................................... 50

*Reisman v. Caplin*,
  375 U.S. 440 (1964) ............................................................ 17, 50

*Riggs Inv. Mgmt. Corp. v. Columbia Partners, L.L.C.*,
  966 F. Supp. 1250 (D.D.C. 1997) ........................................ 56, 57

*Roberson v. SSM Health St. Mary's Hosp.*,
  2023 WL 4743859 (Ill. App. 5 Dist. 2023) ............................... 13

*Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*,
  311 F. Supp. 3d 52 (D.D.C. 2018) ........................................... 45

*Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State U.*,
  665 N.E.2d 914 (Ind. App. 1996) ............................................. 13

*Safari Club Int'l v. Salazar*,
  852 F. Supp. 2d 102 (D.D.C. 2012) .......................................... 65

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................... 49

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) .................................................................. 38

*Slate v. Kamau* 20-CV-3732 (BAH),
    2021 WL 3472438 (D.D.C. Aug. 6, 2021) ......................... 43

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.,*
    27 F.4th 886 (3d Cir. 2022) ........................................... 27, 28

*Sprint Commun., Inc. v. Jacobs,*
    571 U.S. 69 (2013) ................................ 20, 21, 24, 25, 28, 29

*State ex rel. Ashcroft v. Goldberg,*
    608 S.W.2d 385 (Mo. banc 1980) ..................................... 63

*State ex rel. Manion v. Elliott,*
    305 S.W.3d 462 (Mo. 2010) .............................................. 12

*Steel Co. v. Citizens for a Better Envt.,*
    523 U.S. 83 (1998) ....................................................... 19, 20

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ..................................................... 52, 53

*Steinberg v. Int'l Crim. Police Org.,*
    672 F.2d 927 (D.C. Cir. 1981) ......................................... 38

*Thomasson v. Perry,*
    80 F.3d 915 (4th Cir. 1996) ............................................... 2

*Thompson Hine, LLP v. Taieb,*
    734 F.3d 1187 (D.C. Cir. 2013) ............................... 37, 39, 40

*Twitter, Inc. v. Paxton,*
    56 F.4th 1170 (9th Cir. 2022) ........................ 17, 51, 53, 54

*United States v. Ferrara,*
    54 F.3d 825 (D.C. Cir. 1995) ........................................ 32, 36

*United States v. Kulukundis,*
    329 F.2d 197 (2d Cir. 1964) ............................................. 54

*United States v. Morton Salt Co.,*
    338 U.S. 632 (1950) ................................................ 9

*United States v. Texas,*
    599 U.S. 670 (2023) .............................................. 46

*United States v. Whispering Oaks Residential Care Facility, LLC,*
    673 F.3d 813 (8th Cir. 2012) ................................. 9

*Western v. Holder,*
    60 F. Supp. 3d 197 (D.D.C. 2015) ........................ 33

*Va. Off. for Prot. & Advoc. v. Stewart,*
    563 U.S. 247 (2011) .............................................. 35

*Vann v. U.S. Dep't of Interior,*
    701 F.3d 927 (D.C. Cir. 2012) .............................. 35

*Vishay Intertechnology, Inc. v. Delta Int'l Corp.,*
    696 F.2d 1062 (4th Cir. 1982) .............................. 16

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ................................................ 32

Yelp Inc. v. Paxton,
    2024 WL 413464 (N.D. Cal. Feb. 1, 2024) ........... 30

*Younger v. Harris,*
    401 U.S. 37 (1971) ................................................. 1

**Statutes**

28 U.S.C. § 1292(a) ..................................................... 3

28 U.S.C. § 1331 .......................................................... 3

Alaska Stat. § 45.50.592(g) ...................................... 30

D.C. Code § 13-423 ..................... 16, 31, 32, 36, 37, 40, 41, 42, 43, 44, 45

D.C. Code § 13-421 ............................................ 33, 34

Mo. Rev. Stat. § 407.020 ............................................ 7

Mo. Rev. Stat. § 407.040 ..................................................................9, 10

Mo. Rev. Stat. § 407.070 ......................................................................11

Mo. Rev. Stat. § 407.080 ..............................................10, 11, 27, 28, 29

Mo. Rev. Stat. § 407.090 ..........................................................22, 27, 30

Mo. Rev. Stat. § 407.100 ..............................................................10, 27, 29

Mo. Rev. Stat. § 407.456 ........................................................................8

N.H. Rev. Stat. § 300:14 ........................................................................42

Tex. Bus. & Com. Code § 17.62(b), (c) ................................................54

**Rules**

Federal Rule of Appellate Procedure 27(d)(1)(E) ....................................68

Federal Rule of Appellate Procedure 32(a)(1) ........................................68

Federal Rule of Appellate Procedure 32(a)(5) and (6) ............................68

Federal Rule of Appellate Procedure 32(1)(7)(B)(iii) .............................68

Federal Rule of Appellate Procedure 32(a)(7)(c), (f), and (g) .................68

Federal Rule of Civil Procedure 5(b)(2)(C) .............................................44

**Other Authorities**

Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MediaMatters (Nov. 16, 2023) ...............................4, 5, 48

Todd Spangler, *DoubleVerify Apologizes for Misreporting X/Twitter's Brand-Safety Rates for More Than Four Months*, Variety (Apr. 15, 2024) ..........................................................................5, 26. 59

## INTRODUCTION

How shocking it would be if someone asked a state court to issue an order preventing *this* Court from hearing this case. That is the same extraordinary remedy Plaintiffs asked for and received in reverse. Plaintiffs never disputed that they can raise all their claims and defenses in the ongoing proceeding in Missouri state court. Yet at Plaintiffs' request, the district court entered an order forcing Missouri courts to stop adjudicating that case.

That order undermines federalism. Federal courts lack jurisdiction to shut down existing state-court proceedings. Other federal courts regularly reject attempts to challenge state subpoenas in federal court when a state judicial proceeding on that subpoena is already ongoing. *E.g.*, *Backpage.com, LLC v. Hawley*, No. 4:17-CV-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

The district court also misapplied the factors for a preliminary injunction. The state-court proceeding seeks (1) to enforce a subpoena for disclosure of documents as part of an investigation into possibly fraudulent solicitations in Missouri and (2) a small monetary penalty and costs for a separate, indisputable violation of Missouri law. The district

court focused on the first, but overlooked that Plaintiffs lack injury. Plaintiffs asserted injury from having to litigate their defenses *in* Missouri courts rather than elsewhere, yet Plaintiffs *consented* to personal jurisdiction in Missouri.

Likewise, the district court's analysis on the retaliation claim is flawed. Overlooking the strong presumption of good faith the Supreme Court articulated last term, the district court held that the Attorney General's assertion of lawful purpose is pretext because he lacks clear "proof" of legal violations. R.Doc.71, at 33; App.322. *Of course* the Attorney General lacks proof. If he had proof already, he would not need to investigate. The district court also determined that the Attorney General launched his investigation because of Media Matters' speech. Not so. The speech is unprotected (it is defamatory), and the Attorney General launched his investigation not because of the speech, but because of what the speech revealed about Plaintiffs' potential conduct in Missouri. *Thomasson v. Perry*, 80 F.3d 915 (4th Cir. 1996) (en banc) ("no constitutional impediment … to the use of speech as relevant evidence of facts that may furnish a permissible basis"). Compounding those errors, the district court rested its analysis on clearly erroneous assertions, like

saying the speech at issue did not solicit donations, when the article prominently featured a large, red "DONATE" button.

## JURISDICTIONAL STATEMENT

Media Matters invoked the district court's jurisdiction under 28 U.S.C. § 1331. R.Doc.39-2, ¶ 6; App.108. The district court issued a preliminary injunction on August 22, 2024. R.Doc.70; App.2808. General Bailey timely appealed on September 20, 2024. R.Doc.74; App.328. This Court has jurisdiction. 28 U.S.C. § 1292(a).

## ISSUES PRESENTED

1. Did the district court err in finding that D.C. courts have personal jurisdiction over the Missouri Attorney General?

2. Did the district court err in rejecting *Younger* abstention while state-court proceedings were pending?

3. Did the district court err in finding that the Plaintiffs lacked an adequate remedy given that Plaintiffs never disputed they could raise all their federal arguments in state court?

4. Did the district court err in finding that Plaintiffs met the four-factor test for a preliminary injunction?

## STATUTES AND REGULATIONS

All applicable statutes are in the Addendum.

## STATEMENT OF THE CASE

## I.   Factual Background of the Investigation

The Missouri Attorney General is investigating whether Media Matters engaged in fraud and deception to solicit donations from Missourians.  R.Doc.56-1, ¶¶ 6–11; App.242–50.

In November 2023, the Attorney General grew concerned that Media Matters may be misrepresenting its activities when soliciting donations from Missourians.  That month, Plaintiff Hananoki published an article on Media Matters' website alleging that X (formerly Twitter) regularly "plac[es] ads for major brands like Apple, Bravo (NBCUniversal), IBM, Oracle, and Xfinity (Comcast) next to content that touts Adolf Hitler and his Nazi Party."  Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MediaMatters (Nov. 16, 2023).[1]  A slew of major brands then withdrew advertising from X. Media Matters updated its article to identify those organizations.  *Id.*

---

[1] https://www.mediamatters.org/twitter/musk-endorses-antisemitic-

This article was false: Media Matters deliberately curated an artificial experience no X user ever experienced, and then presented that artificial experience as if it were organic and regularly occurring. Hananoki used an account to follow content only "in one of two categories": (1) "those known to produce extreme fringe content," and (2) "accounts owned by X's big-name advertisers." *X Corp. v. Media Matters*, No. 4:23-cv-01175, ECF 1, ¶ 8 (N.D. Tex. Nov. 20, 2023). Then Media Matters "endlessly scroll[ed] and refresh[ed]" its account page until it generated "controversial content next to X's largest advertisers' paid posts." *Id.* ¶ 10. The result? Paid posts of IBM, Comcast, and Oracle "appeared alongside the fringe content cited by Media Matters for ***only one*** viewer (out of more than 500 million) on all of X: ***Media Matters.***" *Id.* ¶ 13 (emphases original). X's lawsuit recently survived a motion to dismiss. *X Corp.*, ECF 82 (Aug. 29, 2024).

Advertisement industry analysis confirms the article was false. DoubleVerify, an organization "which provides brand-safety measurement ratings for digital platforms to major advertisers," recently stated that X's "Brand Safety Rates" were nearly perfect—99.99%—in

<hr>

conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle.

November 2023. Todd Spangler, *DoubleVerify Apologizes for Misreporting X/Twitter's Brand-Safety Rates for More Than Four Months*, Variety (Apr. 15, 2024);[2] R.Doc.56-1, ¶ 10; App.243.

The Attorney General grew concerned that Media Matters may have deceptively used donations from Missourians to fund that defamatory article or may have deceptively obtained donations from Missourians through the prominent "DONATE" link on that article. While Media Matters tells donors it is a watchdog of misinformation, the X article suggests Media Matters is a *producer* of false, defamatory content.

If Missouri donations are linked to the article, that is potentially actionable. For example, if Media Matters misrepresents its plan for donations from Missourians or misrepresents its activities as it solicits donations, that violates Missouri's consumer protection statute—the Missouri Merchandising Practices Act ("MMPA")—which forbids "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the

---

[2] https://variety.com/2024/digital/news/x-twitter-brand-saftey-rate-doubleverify-apology-1235971603/

concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose." Mo. Rev. Stat. § 407.020. This broad statute "cover[s] every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co. Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001).

The Attorney General was concerned because Media Matters engages in substantial activity in Missouri—as Media Matters has acknowledged in this suit. It acknowledges it writes articles about events in Missouri, R.Doc.49-1, at 12 n.11, and solicits donations from Missourians, R.Doc.49-3, ¶¶ 24–25; App.235. In its financial disclosures, Media Matters identifies Missouri "as a state in which it 'is registered or licensed to solicit contributions or has been notified it is exempt from registration.'" R.Doc.56-1, ¶ 7; App.242 (quoting Form 990, Media Matters (2021)).[3] Because of Media Matters' extensive activities in Missouri, it "specifically communicated with the Missouri Attorney General's Office to seek an exemption from registration for its

_____

[3] https://cloudfront.mediamatters.org/static/D8File/2023/11/20/fy21-mmf a-form-990-public-disclosure.pdf?VersionId=7yQZc6sgNQflOrjdO1GHls PMHmzi6HWD

fundraising in Missouri." *Id*. The office granted that exemption because Missouri law permits 501(c)(3) organizations to solicit donations without registering. Mo. Rev. Stat. § 407.456.2(6).

So three days after the defamatory article, the Attorney General announced he was looking into the matter. R.Doc.39-2, ¶ 10; App.109. Three weeks after that, on December 11, 2023, General Bailey issued a "Notice of Pending Investigation" to Plaintiffs, explaining that the Attorney General had "opened an investigation into Media Matters for America ("Media Matters") regarding your firm's potentially unlawful business practices," and instructing Media Matters to preserve records. R.Doc.39-3, pp.1–2;[4] App.129–30.

The investigation confirmed Media Matters' substantial ties to Missouri. "The Missouri Attorney General's Office discovered that Media Matters not only distributes its newsletter in Missouri, but engages in internet and email solicitations, phone solicitations, and in-person solicitations for fundraising." R.Doc.56-1, ¶ 7; App.242.

---

[4] All page citations to the documents filed in the district court refer to the page number listed in the docket stamp.

The investigation also unveiled an internal Media Matters document "expressly marked not for circulation," which describes an internal strategy to "neutralize the effects and infrastructure" of "target" companies by interfering with their ad revenue.  R.Doc.63-2, ¶¶ 5, 8–9, App.282.  Although Media Matters now contends the document was written around 2016, it was not unreasonable to believe Media Matters' strategy of interfering with ad infrastructure would continue several years later, after Elon Musk purchased Twitter and became one of Media Matters' "targets."

## II.    Procedural History

### A.    The Attorney General issues a CID and brings a state-court enforcement proceeding.

As part of this investigation, the Attorney General issued an administrative subpoena, called a CID, which is the civil equivalent of a grand jury.  *See United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 818 (8th Cir. 2012); *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950).  The Attorney General can issue these if he suspects a person has violated Missouri law or if "he believes it to be in the public interest that an investigation should be made."  Mo. Rev. Stat. § 407.040.  The Attorney General "routinely" investigates potential

violations of 'Missouri law by issuing a civil investigative demand for information. R.Doc.56-1, ¶¶ 4, 11; App.242–46. The Attorney General issued the CID on March 25, 2024, by mail. *Id.* ¶ 12; App.244.

The same day, the Attorney General also initiated proceedings in state court to enforce the subpoena. Months before, Media Matters sued Attorney General Paxton in the district court below to quash his CID, R.Doc.1, App.001, making clear Media Matters would not voluntarily comply with Missouri's CID. Missouri law permits litigants to act without delay when delay would be futile. *E.g. New Eng. Carpenters Pension Fund v. Haffner*, 391 S.W.3d 453, 460 (Mo. App. S.D. 2012). In addition, Missouri law enables the Attorney General to sue when a person "is *about* to engage in *any* … act … declared to be unlawful by this chapter," § 407.100 (emphasis added), and failure to comply with a CID is declared unlawful by that chapter in § 407.080.[5] Consistent with Missouri state court service procedures, on March 28, 2024, General Bailey used a process server to serve Media Matters at their office in Washington, D.C. R.Doc.39-2, ¶ 25; App.113.

---

[5] "A person upon whom a civil investigative demand is served pursuant to the provisions of section 407.040 shall comply with the terms thereof unless otherwise provided by an order of a court."

### B.  Media Matters violates Missouri law.

As anticipated, Media Matters refused to comply. Under Missouri law, Media Matters had until April 15 to comply or challenge the CID in court. R.Doc.39-5, at 5; App.137(citing Mo. Rev. Stat. § 407.070). Media Matters did neither, so it violated Missouri's consumer protection law. § 407.080.

The Attorney General thus amended his state-court complaint to assert a violation of the consumer-protection law and seek a $1,000 penalty for that violation. R.Doc.63-1; App.267. By the time General Bailey filed his brief opposing the preliminary injunction, the state-court judge had granted Media Matters' motion to change judges and no replacement judge had yet been assigned. So the Attorney General did not file the amended complaint until after a new judge was assigned, which took more than two weeks.[6]

---

[6] https://www.courts.mo.gov/cnet/cases/newHeader.do?inputVO.caseNumber=24AC-CC02291&inputVO.courtId=SMPDB0004_CT19&inputVO.isTicket=false#docket

### C. Plaintiffs consent to personal jurisdiction in Missouri but then sue the Attorney General in D.C. court.

Three days *after* its deadline to comply or file a challenge in court, Media Matters consented to personal jurisdiction in the state-court proceeding. Missouri law grants each party a "right to disqualify a judge once without cause." *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 464 (Mo. 2010). Media Matters filed what is listed on the state-court docket as a "Motion for Change of Judge" to exercise that right. *See* Docket, *Missouri v. Media Matters*, 24AC-CC02291;[7] *see also* Motion for Change of Judge (Apr. 18, 2024).[8] It also scheduled a hearing on its motion.[9] The motion was granted.

In moving for affirmative, substantive relief, Plaintiffs waived personal jurisdiction because they did not object to jurisdiction at the "first opportunity." *Everett v. Vance*, 685 S.W.3d 495, 501 (Mo. App. W.D. 2023). As every court to consider the issue has concluded, moving for a

---

[7] https://www.courts.mo.gov/cnet/cases/newHeader.do?inputVO.caseNumber=24AC-CC02291&inputVO.courtId=SMPDB0004_CT19&inputVO.isTicket=false#docket

[8] https://www.courts.mo.gov/fv/c/Application%20for%20Change%20of%20Judge.PDF?courtCode=19&di=3131776

[9] https://www.courts.mo.gov/fv/c/Notice%20of%20Hearing.PDF?courtCode=19&di=3131778

change of judge *before* opposing personal jurisdiction waives the issue. *See, e.g.*, *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trustees of Ball State U.*, 665 N.E.2d 914, 919 (Ind. App. 1996); *Roberson v. SSM Health St. Mary's Hosp.*, 2023 WL 4743859 (Ill. App. 5 Dist. 2023). This is consistent with the longstanding rule that "an application for an order of the court can only be made upon the assumption that the court has jurisdiction to make the order, and a party cannot be challenging the jurisdiction and invoking it at one and the same time." *Gravelin v. Porier*, 77 Mont. 260, 250 at 823, 826 (1926).

But despite hiring Missouri counsel and waiving personal jurisdiction in Missouri, Plaintiffs chose *not* to raise their defenses in Missouri court and instead sued in D.C. federal court the same day. R.Doc.39-2; App.267.

Rather than file a new suit, Plaintiffs moved to amend their complaint against Texas Attorney General Paxton to add new claims against General Bailey. R.Doc.39; App.089. Plaintiffs did so because just six days before (April 12), the district court entered a preliminary injunction against General Paxton. R.Doc.38; App.087. Plaintiffs thus sought to take advantage of that favorable judicial assignment.

In moving to amend their complaint, Plaintiffs sought leave to "assert the same set of claims, and seek the same scope of relief against Bailey." R.Doc.38, at 1; App.090. General Paxton opposed, identifying major differences between the investigations, including the existence of a state-court enforcement proceeding in Missouri but not Texas. R.Doc.40, at 3, App.214. Not yet a party, General Bailey had no opportunity to oppose the motion, which the district court granted. R.Doc.44; App.216. The following day, Plaintiffs moved for a preliminary injunction. R.Doc.49; App.220. General Bailey opposed and moved to dismiss. R.Doc.56; R.Doc.57; App.264.

On August 22, 2024, the district court granted a preliminary injunction and ordered General Bailey "enjoined from enforcing the Civil Investigative Demand (CID) issued on March 25, 2024, and prosecuting the Petition filed in the Cole County, Missouri Court." R.Doc.70, at 1; App.288. The district court further enjoined General Bailey "from issuing any additional CIDs, filing or amending Petitions, or taking steps purporting to mandate any action on behalf of Plaintiffs … in furtherance of the investigation of Media Matters." *Id. at* 1–2; App.284–85.

In its opinion, the district court declined to abstain under *Younger*. R.Doc.71, at 8; App.297. In doing so, the district court rejected Defendant's interpretation of Missouri law. The court also acknowledged it was departing from the analysis of the Eastern District of Missouri, which abstained after interpreting Missouri's CID law the same way the Attorney General does. *Id.* at 10–13 & n.2; App.295–98.

The district court then rejected the Attorney General's other procedural arguments, *id.* at 13–18; App.298–303, and concluded that Plaintiffs satisfied the preliminary-injunction test for their First Amendment Retaliation claim, *id.* at 7; App.292. In doing so, the court concluded the Attorney General needed "proof" of violations even to investigate and did not mention the good-faith standard the Supreme Court articulated last term. *Id.* at 33; App.3108.

## SUMMARY OF THE ARGUMENT

**I.** Plaintiffs' petition against General Bailey should have been dismissed under *Younger*, which is jurisdictional and, except in extraordinary circumstances, requires federal courts to dismiss federal lawsuits that would have the practical effect of enjoining state court proceedings. Here, Plaintiffs' sued General Bailey *after* a state-court

enforcement action was filed against Media Matters.  Media Matters has never disputed it could raise all its claims in state court, and binding Supreme Court precedent this Court to presume that state court is adequate.

**II.** D.C. federal court is not a proper forum. Merely serving an out-of-state petition on a D.C. resident does not trigger long-arm jurisdiction against the foreign state.  Plaintiffs have not alleged the necessary factors to exercise jurisdiction for an alleged tort committed outside D.C. that causes injury in D.C. under section 13-423(a)(4).  This Court has held that, as a matter of law, transmitting information outside D.C. into D.C. that allegedly injures someone in D.C. is insufficient to satisfy section 13-423(a)(3). *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 220–21 (D.C. Cir. 1986).  And courts agree that using a process server is not "transacting business" within the meaning of section 13-423(a)(1) or similarly worded statutes. *See*, *e.g. Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062 (4th Cir. 1982).

**III.** Other jurisdictional issues similarly doom Plaintiffs' case. Plaintiffs' seek prospective injunctive relief, but to do that, they needed to identify they would be "chilled" imminently in the future.  But the

prospect of turning over documents is far too remote for any imminent chill because it will not occur unless Media Matters loses its case. Its only claimed chill is having to litigate in state court, but Media Matters consented to personal jurisdiction, so that chill is self-inflicted.

Plaintiffs must also establish that they lack an adequate remedy other than a federal injunction. They did not do so. The Supreme Court has already held that there exists an adequate remedy when a party is able to challenge a request for documents in an ongoing state-court proceeding. *Reisman v. Caplin*, 375 U.S. 440 (1964). Missouri law expressly authorizes the recipient of a CID to bring an action in Missouri State court to challenge the demand. Indeed here, where General Bailey brought an action against Plaintiff Media Matters to enforce the CID in Missouri State court, Plaintiffs were able to challenge the request for documents by offering the very constitutional defenses they brought in this federal action.

Plaintiffs also have not established ripeness. As the Ninth Circuit concluded, where a CID is not self-executing and a party can raise its defenses in state court, an action in federal court challenging the CID is not ripe. *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022).

**IV.** Plaintiffs' were not entitled to injunctive relief because they had not established the necessary elements for a preliminary injunction.

*First*, Plaintiffs are unlikely to succeed on the merits. Under binding Supreme Court precedent, a retaliation claim can proceed only if the government action could not be justified by any legitimate motive. For example, the existence of probable cause necessarily defeats a claim of retaliatory arrest—no matter the arresting officer's motive. *Nieves v. Bartlett*, 587 U.S. 391 (2019). Here, there is evident probable cause that Plaintiffs have been deceptive. Moreover, the Supreme Court has held that adverse actions are not actionable if they are "immaterial." Merely having to litigate in state court instead of federal court is not a material injury.

*Second*, Plaintiffs failed to establish irreparable harm because they have an adequate remedy in state court. Plaintiffs suffer no harm in offering their defenses in state court, where they subjected themselves to personal jurisdiction.

*Third*, the balance of equities and public interest decisively favor Missouri. Plaintiffs' alleged harms are self-inflicted, and their efforts to enjoin Missouri State courts impose grave harms to federalism

# STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 727 (D.C. Cir. 2022) (citation omitted). As part of the likelihood to succeed factor, a plaintiff must establish that the district court has jurisdiction, including personal jurisdiction. *See Food & Water Watch, Inc. v.* Vilsack, 808 F.3d 905, 913–14 (D.C. Cir. 2015). The district court's decision to grant an injunction is reviewed for "abuse of discretion, its legal conclusions *de novo*, and its findings of fact for clear error." *Huisha-Huisha*, 27 F.4th at 726.

# ARGUMENT

## I. *Younger* Abstention Applies While State Court Proceedings Are Pending.

When a public official initiates a proceeding in state court, federal courts must, "except in extraordinary circumstances," abstain from suits that interfere with that state proceeding. *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004). This doctrine is "treated as jurisdictional." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 100

n.3 (1998) (citing *Younger*). And "[w]here the *Younger* requirements are met, the appropriate remedy is dismissal." *J. & W. Seligman & Co. Inc. v. Spitzer*, No. 05CIV.7781, 2007 WL 2822208, at *3 (S.D.N.Y. Sept. 27, 2007).

The reason for abstention is both practical and compelled by foundational concepts of federalism. On the practical side, when a State proceeding is already ongoing, abstention "avoid[s] a duplication of legal proceedings." *Sprint Commun., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). More importantly, abstention ensures "proper respect for state functions." *Id.* "[I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). This interference also "can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Id.* at 604 (citation omitted).

The most recent Supreme Court case on *Younger* abstention identified three categories of state proceedings warranting abstention.

"First, *Younger* precluded federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warranted abstention. Finally, federal courts refrained from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (internal citations and quotation marks omitted). The Missouri state court proceeding fits within the second and third categories. This brief discusses these in reverse order.

**A.    The Missouri court proceeding "touch[es] on a state court's ability to perform its judicial function."**

The third *Younger* category applies: The Missouri state court proceedings "touch on a state court's ability to perform its judicial function." *Sprint*, 571 U.S. at 79 (citing *Juidice v. Vail*, 430 U.S. 327 (1977)). As the Eastern District of Missouri correctly concluded in a materially identical case, this category easily applies when the Missouri Attorney General issues a CID. *Backpage.com, LLC v. Hawley*, No. 4:17-CV-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017); *see also Vail*, 430 U.S. at 335–36 (finding the federal district court was required to abstain under *Younger* because the plaintiff, by challenging the ability of a state court to enforce a subpoena, attacked the "process[ ] through which [the

state] vindicates the regular operation of its judicial system" and a federal proceeding "unduly interferes with the legitimate activities of the State" (quotation and brackets omitted)).

As the Eastern District of Missouri correctly concluded, enforcement of state CIDs "necessarily affects functions performed by the state court." *Vail*, 430 U.S. at 335. As stated above, CIDs are to civil law what the grand jury is to criminal law. Interpreting Missouri law, the Eastern District of Missouri recognized that Missouri "state courts play a *significant* role in the investigation and prosecution of unlawful merchandising practices." *Backpage*, 2017 WL 5726868 at *7 (emphasis added). In Missouri, "CIDs are not self-enforcing." *Id.* at *6. Instead, the Attorney General must rely on courts any time a recipient does not comply. *Id.* at *7 ("If the recipient of a CID fails to comply with its demands, the attorney general may file in state court a petition 'for an order of such court for the enforcement' of the CID,' …. Mo. Rev. Stat. § 407.090."). Because a "request that the Court enjoin AG [Bailey]'s efforts to investigate and prosecute potential violations of the MMPA *necessarily* affects functions performed by the state court … the third *Sprint* category also requires this Court to abstain." *Id.* at *8.

Unlike the Eastern District of Missouri, the district court here did not discuss any of this (even though it was briefed), nor did the district court consider the significant role Missouri law gives to state courts in the public investigative function. Instead, it acknowledged it was departing from the Eastern District of Missouri. R.Doc.71, at 13 n.2; App.302. This court should follow the Eastern District of Missouri. Just as "federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere," *Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979), so too, the Eastern District of Missouri's analysis (which interpreted Missouri's laws) is more relevant than the district court's analysis here (which did not).

That is especially true because this case strikes closer to the core concerns of *Younger*. While the subpoena in *Vail* was issued by a private litigant, 430 U.S. at 329, the subpoena here was issued by the State in its sovereign law-enforcement capacity. The district court's analysis not only affronts the State of Missouri; it also directly interferes with the "significant role" Missouri state courts have under state law. *Backpage*, 2017 WL 5726868 at *7.

Despite all this, the district court applied a new standard (at 12) that the "mere prospect" of a judicial order "is not enough to abstain." But a court should not "read the third category so narrowly as to preclude *Younger* abstention when the state court has not yet issued an order." *Aaron v. O'Connor*, 914 F.3d 1010, 1018 (6th Cir. 2019).  Indeed, the Supreme Court held that a district court was required to abstain under the third category in a federal case filed "*before* the Texas court entered judgment." *Pennzoil Co. v. Texaco*, Inc., 481 U.S. 1, 6 (1987) (emphasis added).

## B. The state court proceeding is a "civil enforcement proceeding."

So too, the second *Younger* category applies, as the Eastern District of Missouri likewise concluded. *Backpage*, 2017 WL 5726868 at *7.  The enforcement proceeding in Missouri is a "civil enforcement proceeding[ ]" within *Younger*.  *Sprint* defines the subset of civil enforcement proceedings that satisfy *Younger* as civil proceedings "'akin to a criminal prosecution' in 'important respects.'"  571 U.S. at 79.  The proceeding need not be criminal; rather, the "important respects" are that the ongoing proceeding is initiated by the State (rather than a private party) and seeks to enforce state law against a private actor.  *Id.*  Specifically,

"[i]n cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action," "[i]nvestigations are commonly involved," and "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.*

The ongoing action in Missouri meets these indicia. There is no dispute that the enforcement action was "initiated by 'the State in its sovereign capacity.'" *Id.* at 80 (citation omitted). While investigations are not per se required, this case obviously involves one. And the state-court lawsuit seeks to penalize Media Matters for two issues: its improper refusal to turn over documents required by Missouri law and its failure to timely respond to the CID.

*First*, Media Matters acknowledges that the case initiated by the State involves an investigation. *E.g.* R.Doc.39-2, ¶ 29; App.114 ("Bailey intends to proceed with his investigation…").

The district court disregarded this admission, and instead incorrectly said (at 10) that there has been "no preliminary investigation." Not so. There has been both a preliminary investigation *and* a discovery of an indisputable violation of law.

The office's preliminary investigation determined that Media Matters has extensive ties to Missouri and solicits donations from Missourians. Indeed, Media Matters wrote to the Missouri Attorney General about whether it needed to register as a charitable organization given its extensive solicitations. R.Doc.56-1, ¶ 7; App.242. The investigation also obtained an internal, confidential memorandum from Media Matters outlining strategies to "interfere with and neutralize the operational infrastructure of certain 'target' companies." R.Doc.63-2, ¶¶ 5–7; App.282. And shortly after the Attorney General issued the CID, the industry group DoubleVerify published its report reinforcing that Media Matters' published criticism of X was wrong and defamatory.

The Missouri Attorney General's investigation was open for nearly five months before his office issued a CID. And not only did the Attorney General investigate, but as explained above, Media Matters indisputably violated Missouri law when it failed to timely respond to the CID.

*Second*, the enforcement action was brought to enforce state law against "the party challenging the state action, for some wrongful act." Specifically, when the Attorney General issues a CID, it triggers a substantive legal duty on the recipient to comply and comply timely.

Media Matters had to "comply with the terms [of the CID] unless otherwise provided by an order of a court," and if Media Matters wanted to try to seek a court order blocking the CID, it had to do so by April 15. Mo. Rev. Stat. § 407.080.

By failing to timely comply or challenge the CID, Media Matters violated substantive Missouri law.  The Attorney General's amended (and operative) complaint thus sought three remedies: (1) a $1,000 civil penalty, § 407.100; (2) production of the documents, § 407.090; and (3) "the cost of the investigation and prosecution of any action to enforce the provisions of this chapter," § 407.130.

That makes this case starkly different from the case on which the district court relied, *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886 (3d Cir. 2022).  That court determined that *Younger* did not apply because the state court proceeding was "not a suit initiated to punish wrongdoing;" the New Jersey Attorney General "did not allege that Smith & Wesson violated any substantive legal duty.  To date, he has not accused the company of violating the Consumer Fraud Act …." 27 F.4th at 892.  Unlike Missouri law, which treats failure to timely obey a CID as a violation of Missouri law, "failure to obey a subpoena issued

by the [New Jersey] Attorney General may be addressed by the court to compel compliance *but it is not treated as a violation of the Consumer Fraud Act.*" *Id.* at 893 (citing New Jersey case law) (emphasis added).[10]

The district court's analogy to *Smith & Wesson* fails because the Attorney General has alleged that Media Matters substantively violated Missouri's consumer protection act. R.Doc.63-1 ¶ 38; App.278. Failure to timely comply or challenge a CID *is* "a violation of the Consumer [Protection] Act" in Missouri. § 407.080.

The district court did not disagree. It questioned (at 10–11) whether Plaintiffs' failure to timely challenge or comply with the CID could be punished with a monetary penalty. But even if true, that is irrelevant. Media Matters indisputably violated the consumer-protection law when it failed to timely challenge the CID. Even if the Attorney General could not seek monetary damages or costs, the Attorney General

---

[10] This Court should not follow the heightened standard created in the Third Circuit (even though Missouri satisfies it) because it is not required by Supreme Court precedent and has not been adopted by other circuits. For example, while the Supreme Court in *Sprint* said that in proceedings triggering *Younger*, "[i]nvestigations are commonly involved, *often* culminating in the filing of a formal complaint or charges," *Sprint*, 571 U.S. at 79–80 (emphasis added), the Third Circuit required "quasi criminal" proceedings and "a preliminary investigation that culminated with the filing of formal charges," 27 F.4th at 891.

can still compel production of the documents as a penalty for the violation. Indeed, Plaintiffs' substantive violation improves Missouri's equitable arguments in state court for obtaining documents.

In any event, the district court was wrong to conclude that the $1,000 penalty provision does not apply to the failure to timely challenge a CID. That section says the Attorney General may seek a $1,000 for "*any* method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter," § 407.100.1 (emphasis added), and that chapter "declare[s it] to be unlawful" not to "comply with" the CID or timely challenge it in court, § 407.080. Thus a violation of § 407.080 is punishable by a fine of up to $1,000. § 407.100.6. The district court's failure to construe Missouri law according to its plain text further highlights why this case belongs in Missouri court.

Other courts have abstained in similar circumstances. For example, the Supreme Court invoked *Younger* "to bar a federal court from entertaining a lawyer's challenge to a New Jersey state ethics committee's pending investigation of the lawyer." *Sprint*, 571 U.S. at 81 (citing *Middlesex Cnty. Ethics Comm. v. Garden State B. Ass'n*, 457 U.S. 423, 433–35 (1982)); *see also Backpage*, 2017 WL 5726868 at *1, 13

(abstention required because of the existing proceeding to enforce Missouri CID in state court).

And in another case from earlier this year, *Yelp Inc. v. Paxton*, a California federal court abstained where the Texas Attorney General initiated proceedings to enforce a CID and a company later filed a federal suit for injunctive relief. No. 23-CV-04977-TLT, 2024 WL 413464, at *3 (N.D. Cal. Feb. 1, 2024). Plaintiffs argued below that *Yelp* was distinguishable because those proceedings "involved civil penalties." R.Doc.61, at 8–9 (citation omitted). So too here. If these factors supported abstention in *Yelp*, they equally support it here. The district court erred in finding that the Missouri state court action was not a "civil enforcement proceeding."

Similarly, *Lupin Pharmaceuticals, Inc. v. Richards*, No. 15-1281, 2015 WL 4068818 (D. Md. July 2, 2015), is directly on point. In *Lupin*, the target of a CID served by the Alaska Attorney General filed a federal-court action challenging the CID. *Id.* at *2. The Alaska Attorney General, in turn, filed a state-court action to enforce the CID under Alaska Stat. § 45.50.592(g), which is nearly identical to Mo. Rev. Stat. § 407.090. *Id.* Applying *Sprint*, the district court concluded that the

state-court enforcement proceeding "clearly" warranted abstention. *Id.* at *3.

## II. The District Court Erred in Finding That D.C. Federal Courts Have Personal Jurisdiction over the Missouri Attorney General.

Media Matters cannot establish that D.C. is a proper forum. The Attorney General resides in Missouri and thus is not subject to general jurisdiction. As to specific jurisdiction, there is no "activity or an occurrence that takes place in" D.C. sufficient to satisfy both D.C.'s long-arm statute and the Due Process Clause. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262, 264 (2017).

The district court invoked two subsections of the long-arm statute, D.C. Code § 13-423, which provide in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> (1) transacting any business in the District of Columbia;
>
> …
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia[.]

The district court found that the Attorney General was a "person" within the meaning of—and subject to personal jurisdiction under—subsections (a)(3) and (a)(1).  This was error.

## A.  Attorney General Bailey is not a "person" within the meaning of the D.C. Code.

The Missouri Attorney General is not a "person" under § 13-423. This Court has long held that D.C.'s long-arm statute does not apply to States. *United States v. Ferrara*, 54 F.3d 825, 831–32 (D.C. Cir. 1995).  It follows that "person" does not encompass state officers sued in their official capacities because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself."  *Id.*

Here, Media Matters sued General Bailey only "in his official capacity," R.Doc.39-2, ¶ 5; App.107–108, so it is "no different from a suit against the State itself," *Will*, 491 U.S. at 71.  It is thus no surprise that, as the district court acknowledged, no court in this circuit has ever

concluded that "person" extends to a government official in his official capacity. R.Doc.37, at 12–13; App.66–67.[11]

This conclusion accords with the statute's text, which the district court correctly concluded does not on its own extend to "a state official sued in their official capacity." *Id.* The statute defines "person" only as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity." D.C. Code § 13-421. That does not include an official sued in his official capacity, which is why courts regularly conclude that the long-arm statute does not provide for jurisdiction over an out-of-state official acting in their official capacity. *E.g.*, *Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 123 (D.D.C. 2016), *aff'd sub nom. Kwok Sze v. Kelly*, 2017 WL 2332592 (D.C. Cir. Feb. 21, 2017); *see also Western v. Holder*, 60 F. Supp. 3d 197, 195 (D.D.C. 2015).

Standard canons of textual interpretation reinforce this conclusion. For example, inclusion of one item in a group is understood to exclude others not listed. *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1137

---

[11] The district court adjudicated this issue in a footnote, incorporating its analysis from its order against Paxton. R.Doc.71, at 13 n.4; App.302.

(D.C. Cir. 2022). "Person" is defined to include a number of categories, none of which fairly encompass "government official" in his official capacity. The *noscitur a sociis* canon supports the same conclusion. This canon is "wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth." *McDonnell v. United States*, 579 U.S. 550, 569 (2016). Here, "individual" in section 13-421 is surrounded by other human relationships like "executor," groups of natural persons like "partnership," or creatures of statute like "corporation." The occupant of a government office sued in his official capacity is unlike those included in section 13-421's list.

Acknowledging that the text on its own did not support interpreting "person" to include the Attorney General, the district court resorted to the legal fiction of *Ex parte Young*, R.Doc.37, at 13; App.059. But that doctrine *undercuts* the district court's analysis. *Ex parte Young* is a limited exception to sovereign immunity, but a suit under that doctrine is still in *all other respects* a suit against the State. "The *Ex parte Young* doctrine allows suits for declaratory and injunctive relief against government officials in their official capacities—notwithstanding the

sovereign immunity possessed by the government itself." *Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 929 (D.C. Cir. 2012).

In other words, *Ex parte Young* directs courts to consider a defendant "not the State *for sovereign-immunity purposes*." *Id.* (emphasis added) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)). But for all other purposes, including personal jurisdiction, the official remains part of the State. *See id.* That is why "an injunction entered against an officer in his official capacity is binding on the officer's successors." *Vann*, 701 F.3d at 929. By contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a governmental official for actions he takes"—not on the government he represents. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Because the question here is one of statutory interpretation—not sovereign immunity—*Ex parte Young* does not apply. At most, *Ex parte Young* means that the long-arm statute could, consistent with due process, potentially be amended to encompass suits against officials in their official capacity. But because it has not yet been amended, the current statutory definition remains. It excludes officials in their official capacities.

To hold that General Bailey is subject to personal jurisdiction in his *official* capacity in D.C. is to hold that *Missouri* is subject to jurisdiction. That conclusion is foreclosed by *Ferrara*. 54 F.3d at 831–32. The district court lacked personal jurisdiction.

## B. Hiring a process server for a state court petition is not "transacting business" in D.C.

Unlike above, the district court here departed from the analysis it issued against Paxton. That is because General Bailey pointed out that the district court's previous analysis relied on precedent that was not good law. The district court's new analysis is no better. Indeed, it relies on a minority, four-judge opinion expressly rejected by this Court.

Merely hiring a process server in D.C. is not "transacting business" in the District. Subsection (a)(1) confers jurisdiction only over a defendant for their "transacting any business in the District of Columbia." To satisfy this standard, a "plaintiff *must* show that the defendant has purposefully engaged in some type of *commercial or business-related activity* directed at District residents.". *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001) (emphasis added). As with all aspects of the personal jurisdiction inquiry, the focus of (a)(1) is "on where the defendant undertook the challenged (*business*)

actions, not where the plaintiff felt the injury." *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) (emphasis added).

This Court has made clear that contracting for services in D.C. is not *alone* sufficient to confer personal jurisdiction under subsection (a)(1). *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1194 (D.C. Cir. 2013) (citing *Env't Rsch. Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 812 (D.C. 1976) (en banc)). Instead, a plaintiff must show "*other deliberate contact* with the forum—demonstrated by the terms of the contract itself or by the non-resident's actual dealings with the District." *Id.* (emphasis added). Plaintiffs have not claimed any "other deliberate contact."

In addition, neither Plaintiffs nor the district court cited any case where a court found personal jurisdiction over an out-of-state party based on a contract of which the plaintiff was not party. The Attorney General is unaware of any such case, and under this Court's precedent, it would be illogical to allow a third party to establish personal jurisdiction on a defendant's single contract in D.C. where an in-forum contractual party could not establish personal jurisdiction himself.

Against all this, the district court concluded that "contracting with an agent to cause personal service of alleged retaliatory process established the requisite minimum contacts." R.Doc.71, at 14; App.303. In doing so, the district court abandoned much of its previous analysis. When enjoining Paxton, the court relied on a Maryland ruling, *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350 (1967), and a D.C. Circuit concurrence, *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927 (D.C. Cir. 1981). R.Doc.37, at 23–24; App.069–70. When General Bailey informed the district court that its reliance on those cases was flawed because *Holder* and *Forras* postdate *Steinberg*, R.Doc.63, at 22, the district court abandoned reliance on those cases and instead cited a minority opinion in *Mouzavires v. Baxter*, 434 A.2d 988 (D.C. 1981). R.Doc, 71, at 13–15; App.298–99.

But that minority opinion was rejected not only by a majority of that court, but also by *this Court*. Four of the nine judges dissented, and a fifth concurred in the judgment without opinion. Such a decision is "of questionable precedential value," because the nature of the split necessarily means "a majority of the Court expressly disagreed with the rationale of the plurality." *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44,

66 (1996).  Indeed, the four-judge dissent explained that the plurality "has no efficacy beyond this case, it does not change the law in this jurisdiction." *Mouzavires*, 434 A.2d at 999 (Harris, J. dissenting).  More critically, this Court later endorsed the dissent: "the dissent in *Mouzavires* concluded—properly in our view" that personal jurisdiction is not proper simply because a defendant "retained the professional services of a District of Columbia firm." *Thompson Hine,* 734 F.3d at 1194 (citation omitted).

Nevertheless, the district court quotes the minority opinion for the proposition that "[i]t is now well-settled that the 'transacting any business' provision embraces those contractual activities of a nonresident defendants which cause a consequence here." R.Doc,71, at 14; App.299 (citing *Mouzavires*, 434 A.2d at 992).  Yet, the dissent called this view "both conceptually wrong and unsupported by any sound authority." *Mouzavires*, 434 A.2d at 1001 (Harris, J. dissenting).  Instead, "any analysis of whether the defendants properly may be subjected to the Superior Court's jurisdiction not only must begin with, but moreover *must turn upon, whether they transacted business* within the District of Columbia." *Id.*

How then, does a court determine whether someone "transacted business" for purposes of subsection (a)(1)? "[T]hat question should be controlled by *Environmental Research* and by other relevant authorities," *id.*, as this Court likewise determined when it endorsed the *Mouzavires* dissenters' view of that case, *Thompson Hine,* 734 F.3d at 1194. In *Environmental Research*, the court found that "[t]he mere fact that a nonresident has retained the professional services of a District of Columbia firm … does not constitute an invocation by the nonresident of the benefits and protections of the District's laws." *Env't Rsch.*, 355 A.2d at 812.

Those are exactly the facts here. *See* R.Doc.71, at 14–15; App.303–04. General Bailey hired a process server to serve Media Matters. R.Doc.39-3, ¶ 14; App.110. Nothing more. He has had no other relevant contacts with D.C. Both *Holder* and *Forras* make clear that subsection (a)(1) is predicated on some "business" or "commercial or business-related activity." Hiring a process servicer for an out-of-state petition is related to the activities of government, not commerce or business. Importantly, there is no *economic* benefit—actual or potential—from service. *Mouzavires*, 434 A.2d at 1001–02 (no personal jurisdiction where

"defendant[ ] *derived no direct economic benefit* from any relationship with [D.C.]") (Harris, J. dissenting).

## C.    Merely hiring a process server is not tortious activity.

Even weaker is the district court's conclusion that merely hiring a process server satisfied the "tortious activity" prong of the long-arm statute.  Subsection (a)(3) "confers jurisdiction only over a defendant who commits an act in the District which causes an injury in the District." *Moncrief*, 807 F.2d at 221.  As the district court rightly acknowledged, General Bailey's *only* contact with D.C. was hiring a server to deliver the state-court petition.  R.Doc.71, at 15–16; App.304–05.  As a matter of well-settled law, that limited activity is far from sufficient.

Subsection (a)(3) does not apply because Media Matters' lawsuit concerns actions that occurred in Missouri.  Subsection "(a)(3) requires that both the alleged tortious injury *and the act forming the basis of the claim* must have occurred in the District, and the plaintiffs are alleging both economic and emotional injuries." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 270 n.18 (D.D.C. 2011) (emphasis added).  Plaintiffs allege no tortious act in D.C., and likewise do not assert that any tortious act is *the basis* of any of their four claims.

To the contrary, they say the basis of their injury is General Bailey's "investigation, intrusive Demand, and Petition to enforce that Demand." R.Doc.39-2, ¶ 39; App.115;

Under this Court's decision in *Moncrief*, delivery of correspondence is insufficient to confer jurisdiction under subsection (a)(3), especially where that delivery itself is not the basis of Plaintiffs' claims. In *Moncrief*, the defendants printed outside of D.C. a newspaper with a defamatory news article, and then mailed issues of the paper into D.C., injuring the plaintiff in D.C. *Moncrief*, 807 F.2d at 218–19. This Court rejected the argument that physically sending the defamatory article into D.C. where it was delivered to subscribers was an "act" in D.C. within subsection (a)(3). *Id.* at 219–21. This Court distinguished D.C.'s subsection (a)(3) from the statute in *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984)—N.H. Rev. Stat. § 300:14 (1977)—which did not expressly require that the plaintiffs' act to cause injury in the forum. *Id.* at 220–21.

Just as in *Moncrief*, Plaintiffs' alleged harms were caused by actions outside D.C—an investigation in Missouri; a CID issued in Missouri; a petition to enforce the CID in Missouri state court—that later

were transmitted into the venue by email, mail, and a process server. The clear locus of General Bailey's acts was squarely within the borders of Missouri. Thus under *Moncrief*, General Bailey did not commit an "act" in D.C. within subsection (a)(3).

Despite the clear limits of subsection (a)(3), Plaintiffs below attempted to establish that the mere acts of mailing the CID and serving a petition to enforce the CID in D.C. were sufficient to establish jurisdiction. This contention fails for three primary reasons.

*First*, it was precisely because of the restricted character of subsection (a)(3)—and specifically the requirement that both the act and injury occur in D.C.—that *Moncrief* interpreted subsection (a)(3) narrowly. 807 F.2d at 220–21. Since then, D.C. courts have repeatedly held that "mailing a letter or other material into Washington, DC from outside of the District does not qualify as an 'act … in the District of Columbia within the meaning of subsection (a)(3)." *Slate v. Kamau*, 20-CV-3732 (BAH), 2021 WL 3472438, at *6 (D.D.C. Aug. 6, 2021).

*Second*, under the logic of these opinions, it makes no difference that General Bailey transmitted the CID to Plaintiffs via process server. Regardless of the medium, "limited communications initiated from

outside the District of Columbia to a District resident do not qualify as an act 'in the District' for purposes of §13-423(a)(3)." *Dyson v. Dutko Ragen Homes & Invs.*, 21-CV-02280 (APM), 2022 WL 1294484, at *4 (D.D.C. Apr. 27, 2022). Indeed, the district court acknowledged that "courts consistently have held that a mailing into the District is not enough to satisfy subsection (a)(3)." R.Doc.71, at 15; App.304. Service by mail is routine. *E.g.*, FRCP 5(b)(2)(C). If hiring the post office to issue service is insufficient, how can it be any different with a private courier? The district court offers no answer.

*Third*, attempting to circumvent this issue, Plaintiffs asserted that service amounted to "abusive service of process," but that claim appears nowhere in their complaint, and in any event cannot be supported. "Under District of Columbia law, abuse of process occurs when process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (citation and quotations omitted). "There are two essential elements to an abuse of process claim:

(1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge." *Id.* (citation and quotations omitted).

In other words, beyond an ulterior motive, there must be "some act or threat directed to an immediate objective not legitimate in the use of process" akin to "some form of extortion." *See Rockwell Cap. Partners, Inc. v. CD Int'l Enterprises, Inc.*, 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (bracket adopted). Service of a filed court petition to enforce a CID is the regular process by which the Missouri Attorney General must enforce demands under the MMPA. There is no threat or extortion directed at an illegitimate immediate objective, and Plaintiffs have never contended otherwise.

Because service is not the basis of Plaintiffs' claims, and because General Bailey took no acts—tortious or otherwise—in D.C., the district court erred in concluding that subsection (a)(3) supported personal jurisdiction.

## III. Plaintiffs Cannot Establish a Justiciable, Ripe Injury, Nor the Absence of an Adequate Remedy at Law.

Plaintiffs must establish the regular three elements of standing plus that the dispute is "ripe" and—because Plaintiffs seek a prospective

injunction—that there is no adequate remedy at law other than a federal injunction. *Natl. Park Hosp. Ass'n v. Dept. of Int.*, 538 U.S. 803, 807 (2003) (ripeness); *Natl. Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.22 (1985) (adequate remedy). Plaintiffs have not done so.

## A. Plaintiffs' assertion of injury fails as a matter of law and is self-defeating.

As to standing, Plaintiffs sit on the horns of a dilemma. They seek only prospective relief, so they must identify "future injury." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024). They identify an alleged "chill" as their injury, but a chill from what? It cannot be a chill from having to produce documents, because that is not imminent. Plaintiffs will not have to turn over a single document unless and until all their defenses are rejected in court. There is nothing imminent about that. Because Plaintiffs will not be chilled unless they *lose* all their defenses, this is not a "legally and judicially cognizable" injury. *United States v. Texas*, 599 U.S. 670, 676 (2023).

So Plaintiffs instead assert chill from having to litigate. But they cannot assert even that because they chose to bring this suit. They are going to litigate the issues one way or another, and no injunction will

remove that chill. So instead they complain about litigating in Missouri instead of D.C, saying there is an enforcement action "in a foreign venue" and that this foreign venue "obviously lack[s] personal jurisdiction." R.Doc.49-1, at 24, 43. The problem, of course, is Plaintiffs *consented* to personal jurisdiction by asking the Missouri court for affirmative relief without first objecting to personal jurisdiction. *Supra* Part II.C of the Statement of the Case. They cannot claim that litigating elsewhere is a chill when they consented to litigate there. That is especially true because "the burden of defending an enforcement action is not sufficient to warrant interference by the federal courts" because those burdens are incidental to every proceeding. *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1122 (D.C. Cir. 2004) (quotation marks omitted); *see also Cameron v. Johnson*, 390 U.S. 611, 618 (1968) ("injury incidental to every proceeding"). Otherwise, every lawsuit would chill under the First Amendment.

If anything, Plaintiffs' decision to sue *increased* chill. In bringing this suit, Plaintiffs have exposed themselves to *more* legal process, not less. If Plaintiffs truly believed their personal jurisdiction argument were meritorious, they could have quickly moved to dismiss in Missouri

court and ended the whole thing. Instead, they chose to introduce many new issues, opening the door to extensive discovery, including depositions assessing the accuracy of their (implausible) assertions of chill on their reporting process.

Even if Plaintiffs' assertions of chill were cognizable (they are not), they provided no evidence that this chill was caused by the Missouri Attorney General. Plaintiffs were already complaining of chill from Attorney General Paxton's actions. Their declarants admit that the chill they experience (if any) is no different after the CID than it was before. Hananoki, for example, states that he "*continue*[s]" to be chilled. R.Doc.49-2, ¶¶ 11–12; App.227–28 (emphasis added). Dimiero says that Media Matters reporters "*continue* to self-censor." R.Doc.49-5, ¶ 7; App.239. No declarant alleges any reduction in output tied specifically to the CID, rather than the underlying investigation (which Media Matters did not challenge), the Paxton investigation, or the lawsuit brought by X.

Finally, Plaintiffs' assertions of chill are not cognizable in light of Media Matters' avowedly partisan nature. Courts must "distinguish material from immaterial adverse actions." *Houston Cmty. Coll. Sys. v.*

*Wilson*, 595 U.S. 468, 477 (2022). And just like "we expect elected representatives to shoulder a degree of criticism," *id.* at 478, the same is true of political actors. Media Matters describes itself as a "progressive research and information center" that seeks to combat "the conservative agenda."[12] An organization cannot play in the rough-and-tumble of political activism and then claim to have an eggshell-thin skull when it comes to chill.

## B. The state court proceeding provides an adequate remedy.

The Supreme Court has repeatedly stated that "(t)he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (citation omitted). So Plaintiffs *must* show "that [they have] an inadequate remedy at law." *Pulliam v. Allen,* 466 U.S. 522, 537 (1984). They cannot because they can raise all their defenses in Missouri state court. Indeed, this Court is required to presume state courts are adequate. "[A] federal court should assume that state procedures will

---

[12] https://www.mediamatters.org/about-us

afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co.*, 481 U.S. at 15.

The Supreme Court's decision in *Reisman v. Caplin* makes clear that Plaintiffs cannot establish lack of an adequate remedy. 375 U.S. at 440. There, the Supreme Court held that an agency's non-self-executing request for documents is not reviewable until the agency tries to enforce it. The recipient of an administrative subpoena was not obligated to produce anything until after the agency brought an "enforcement action" where the recipient would be afforded "a judicial determination" of the lawfulness of the request and the viability of any of his defenses. *Id.* at 446. That "opportunity for judicial review before any coercive sanctions may be imposed" was an adequate "remedy"; and the court would not permit the recipient of the request to short-circuit this process by preemptively seeking an injunction in federal court. *Id.* at 450. Plaintiffs have this exact opportunity in Missouri state court.

The district court dismissed *Reisman*, but its explanation directly conflicts with *its own* rationale granting a preliminary injunction against Attorney General Paxton. There, the court concluded that *Reisman* did not apply because, unlike in *Reisman*, "[t]he Texas Code contains no

equivalent remedies for a non-resident challenging a CID" as Texas law refers only to *in-state* defendants contesting a CID. R.Doc.37, at 30; App.076. Yet, now that the Missouri Attorney General is a defendant, and Missouri courts *do* afford an adequate remedy at law, the district court changed its mind, stating that *Reisman* is different because it did not involve a claim under the First Amendment, "under which a chilling effect on speech can itself be the harm." R.Doc.71, at 17; App.306. But Plaintiffs seek prospective relief only, so they cannot rely on past chill. This case is thus on all fours with *Reisman*. "[T]he injury in *Reisman* would only occur if the document request were satisfied." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 (9th Cir. 2022). So too here. *Reisman* forecloses Plaintiffs from suing because their ability to raise defenses to future injury (complying with the CID) in state court means Media Matters has an adequate remedy at law, and "[i]t is a fundamental principle of long standing that a request for an injunction will not be granted as long as an adequate remedy at law is available." *Natl. Farmers Union*, 471 U.S. at 856 n.22.

No better is the district court's argument that *Reisman* does not apply because it would create a "state-court exhaustion requirement."

The cases cited by the district court at most hold that a federal plaintiff is not required to litigate in state court when there is *no* ongoing state-court proceeding. There is a world of difference between holding that the CID recipient need not bring a case as a *plaintiff* in state court and holding, as *Reisman* does, that if the CID recipient is the *defendant* in state court, that recipient has an adequate remedy at law.

Indeed, the case the district court cites, *Steffel v. Thompson*, 415 U.S. 452 (1974), affirmatively undermines the district court's analysis. The district court cites *Steffel* for the proposition that litigation in state court is not required when a plaintiff brings a § 1983 claim, but in *Steffel* "no state prosecution had been commenced." *Id.* at 472–73. Indeed, *Steffel* stressed that there are serious concerns weighing *against* involvement by federal courts when there is "a pending state proceeding." *Id.* at 462 (citation omitted). When, as here, there is a "pending state proceeding," federal intervention "result[s] in duplicative legal proceedings," leads to "disruption of the state" court system, and "reflect[s] negatively upon the state court's ability to enforce constitutional principles." *Id.* In contrast, a pending state proceeding

"provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights." *Id.*

*Reisman* and *Steffel* thus make clear that while a CID recipient might not need to affirmatively sue in state court to vindicate rights, if there is already a pending proceeding, then the recipient has an adequate remedy and cannot receive an injunction in federal court.

**C.   Media Matters' case is not ripe.**

Even if there were no adequate remedy at law, *Twitter, Inc. v. Paxton* holds that where a recipient of a CID "can raise its First Amendment defense" in state court, a federal challenge is not ripe. 56 F.4th 1170, 1178 (9th Cir. 2022). "[U]nlike the analysis of *Reisman*, [the] ripeness analysis does not rely on the lack of an adequate remedy at law," and so it independently bars judicial relief. *Id.* at 1179. Here, there is an enforcement action in Missouri state court, and Plaintiffs are not only participating but will also have a full opportunity to raise their federal claims. As such, this case should be dismissed for ripeness.

In holding otherwise, the district court misread *Twitter*. The district court said, "Nowhere did the [*Twitter*] court say that the availability of a legal remedy in state court made Twitter's claims not

ripe." R.Doc.71, at 18; App.307.  To the contrary, *Twitter* clearly stated that Twitter's federal claims against a non-self-enforcing CID were unripe because once a petition was filed "the state court can conduct hearings to determine whether to order enforcement, and the recipient may appeal to the Texas Supreme Court."  56 F.4th at 1176 (citing Tex. Bus. & Com. Code § 17.62(b), (c)).

These decisions are consistent with the routine conclusion by courts that "pre-enforcement review of investigative subpoenas" is strongly disfavored.  *See, e.g., Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334 (10th Cir. 1984); *see also United States v. Kulukundis*, 329 F.2d 197, 199 (2d Cir. 1964) (Friendly, J.) (explaining *Reisman* "seems to destroy the basis underlying decisions of this court which authorized applications to vacate [non-self-executing subpoenas] (and appeals from their denial) in advance of any judicial proceeding by the Government for their enforcement").  This is true even if there is an assertion of First Amendment claims.  *See, e.g., Google, Inc. v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016) (concluding, in the First Amendment context, that "administrative subpoena is not ripe for review" because it is not "self-executing").

**IV. The District Court Erred in Finding That Plaintiffs Met the Four-Factor Test For Entering a Preliminary Injunction.**

Even assuming jurisdiction, that *Younger* does not apply, that Plaintiffs lack an adequate remedy in Missouri state court, and that Plaintiffs' claims are ripe, the preliminary injunction was still improper: Plaintiffs are unlikely to succeed on the merits of their First Amendment retaliation claim; they have not demonstrated irreparable harm, and the equities and public interest favor General Bailey.

**A.    Plaintiffs are unlikely to succeed on the merits.**

The district court focused solely on Plaintiffs' First Amendment retaliation claim.  To prevail on that claim, a plaintiff must show "(1) [they] engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against [them]."  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (citation omitted).  More recently, the Supreme Court clarified that proving causation is difficult: Plaintiffs "must show, among other things, that the government took an 'adverse action' in response to [its] speech

that 'would not have been taken absent the retaliatory motive.'" *Wilson*, 595 U.S. at 477 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

The district court erred in finding that Plaintiffs met each of these elements.

### 1. Plaintiffs were not engaged in protected speech.

Under consumer protection laws, a party can constitutionally be liable for statements that are "defamatory" or "likely to mislead or confuse consumers." *Farah v. Esq. Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013); *Riggs Inv. Mgmt. Corp. v. Columbia Partners, L.L.C.*, 966 F. Supp. 1250, 1268 (D.D.C. 1997); *see also Novartis Corp. v. FTC*, 223 F.3d 783, 787 & n.3 (D.C. Cir. 2000). Plaintiffs cannot succeed on their retaliation claim because the November 2023 reporting was based on defamatory statements used to deceive consumers and advertisers and target X's revenue streams.

In holding otherwise, the district court concluded the post could not be defamatory because "X did not deny that advertising in fact had appeared next to the extremist posts on the day in question." R.Doc.71, at 20; App.239.[13] But the district court overlooked that what made the

---

[13] The district court said that General Bailey asserted that Plaintiffs'

post defamatory was Media Matters' false representation that this was *common* on X rather than a rigged result intentionally created by Media Matters. X's complaint in federal court stated that there were "less than 50 total ad impressions" next to the content highlighted by Plaintiffs out of 5.5 *billion* ad impressions that day. *Id.* In other words, Plaintiffs represented as common something that occurred .0000009% of the time on a single day. That raises the specter for defamation because the statements in the article "were likely to mislead or confuse consumers." *Riggs Inv. Mgmt. Corp.*, 966 F. Supp. at 1268. Specifically, it was likely to mislead advertisers and cause them to leave X in droves, which in fact happened.

That explains why the district court here departed from the Texas district court where X sued. The Texas district court rejected a motion to

---

article was defamatory only in his reply brief to his motion to dismiss, so he "forfeited" his argument on this element. R.Doc.71, at 19; App.309. Not so. In his response brief to the preliminary-injunction motion, General Bailey asserted that the investigation centered on Plaintiffs' "defaming the social media platform X (formerly Twitter) by falsely representing that X routinely populates advertisements for brands like Apple, IBM, and Xfinity next to extremist, fringe content" and that X's lawsuit "lays out a fact pattern that shows conduct not only 'likely' to deceive consumers, but deliberately designed to do so." R.Doc.56, at 9, 38 (citing R.Doc.56-1, ¶¶ 6–11; App.242–44). General Bailey's reply brief was also directly responsive to Plaintiffs' statements in their response.

dismiss, holding that X properly stated a claim. The district court here found there was no defamation only by entirely overlooking General Bailey's arguments about what made the article defamatory.

### 2. Plaintiffs did not establish that they were chilled.

As discussed above, *supra* Section III.A, Plaintiffs have not established chill because their prospective chill stems from having to litigate in Missouri (where they consented to jurisdiction) and they failed to identify any chill different after the CID and enforcement action than before.

### 3. Plaintiffs cannot establish causation.

The district court erred by concluding that the *Nieves* causation standard did not apply to the retaliation claim. To assert a First Amendment retaliation claim, Plaintiffs "must show, among other things, that the government took an 'adverse action' in response to [its] speech that 'would not have been taken absent the retaliatory motive.'" *Wilson*, 595 U.S. at 477 (quoting *Nieves*, 587 U.S. at 398).

This exceptionally heavy burden requires Plaintiffs to establish there was no legitimate ground to investigate *at all*. Specifically, in *Nieves*, the Supreme Court concluded that a retaliatory-arrest claim

automatically fails if there is probable cause for the arrest, regardless of the individual officer's subjective motivation. *See* 587 U.S. at 408 ("Because there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law."). That rule is necessary because of the "presumption of regularity underlying the prosecutor's [enforcement] decision—a presumption [courts] 'do not lightly discard.'" *Id.* at 400 (citation omitted).

Plaintiffs cannot establish there was no probable cause at all to launch an investigation. Indeed, Plaintiffs entirely ignored this standard below, and made no effort to respond to General Bailey's argument. But as discussed above, X Corp.'s lawsuit lays out a highly concerning deceptive fact pattern by the Plaintiffs in publishing the article at issue, and the DoubleVerify report provides further reason to be skeptical of Media Matters' narrative. That alone provides probable cause.

To escape this conclusion, the district court asserts it "is not convinced *Nieves* applies"[14] and claims General Bailey "cites no case in

---

[14] The district court also misapplied what it termed a "*Nieves* exception" "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." R.Doc.71, at 26; App.315 (quoting *Nieves*, 587 U.S. at 406). Media Matters has not identified any similar circumstance where the Missouri Attorney General

which a court has applied *Nieves* in the civil context." R.Doc.71, at 24; App.313. Not so. In supplemental briefing initiated by Plaintiffs, General Bailey cited *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221 (2024), where the Supreme Court explicitly applied the good-faith presumption to the civil context. Though not citing *Nieves*, the Supreme Court extended the *Nieves* presumption of good faith outside the criminal context and further explained that the presumption "directs district courts to draw the inference that cuts in the [government's] favor when confronted with evidence that could plausibly support multiple conclusions." *Id.* at 1235–36.

Despite the Attorney General repeatedly discussing this new case, the district court did not cite it or grapple with it. Instead, the district court did the exact opposite of what the Supreme Court said to do: it drew all inferences *against* the government.

The district court did so by applying a burden-shifting framework from *Mt. Healthy City School District Board of Education v. Doyle*, 429

---

declined to investigate. The district court noted (at 27) that other outlets had published stories about extremist content on X, but none of those outlets were credibly accused of manipulating X's algorithm intentionally to *generate* that content for the purpose of convincing advertisers to withdraw.

U.S. 274, 287 (1977). R.Doc.71, at 27; App.317. This was error for several reasons.

*First*, the Supreme Court held that *Mt. Healthy* applies only when "the plaintiff establishes the absence of probable cause." *Nieves*, 587 U.S. at 404. So that framework does not apply here. That is likely why Plaintiffs never raised *Mt. Healthy* in their briefing.

*Second*, the district court found that Plaintiffs' "speech is the sole basis for the retaliatory action." R.Doc.71, at 28; App.317. As discussed above, that is not true. At most, the Attorney General investigated because Media Matters' (unprotected) speech was *evidence* of other improper conduct. The district court acknowledged that even "protected speech is often a 'wholly legitimate consideration' for officers when deciding whether" to pursue enforcement. *Id.* at 24; App.309 (quoting *Nieves*, 587 U.S. at 401).

*Third*, the district court stated that the Attorney General conceded at oral argument "that Media Matters is a 'media company' that is 'absolutely' entitled to 'core' First Amendment protections." *Id.* at 29; App.314. But the Attorney General's acknowledgment that Media Matters, "a self-described partisan media company," Tr. at 55:20–57:1, is

*generally* entitled to First Amendment protections, was not a concession that the defamatory statements were protected. *Id.*

*Fourth*, the district court's discussion includes clearly erroneous factual conclusions. For example, the district court said the article lacked a donation link, and just had the ability to donate in "a dropdown menu." R.Doc.71, at 31 n.8; App.320. Not so. A red, all-caps "DONATE" button appears prominently on the article in the top-right part of the page.[15]



Similarly, the district court's discussion of the Reed declaration contains incorrect statements. To start, the court said (at 31) that "Reed

---

[15] https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle

does not say that his office independently sought to substantiate these allegations," but then acknowledges (at 32-33) the Attorney General's receipt of an internal memorandum detailing Media Matters' efforts to interfere with "target" companies' ability to generate advertising revenue. The district court then says (at 31) "Reed nowhere explains how the publication constitutes 'fraud to solicit donations from Missourians,'" but General Bailey expressly made this argument in his briefing. *See* R.Doc.56, at 12. Perhaps worst of all, the district court suggested (at 33) that General Bailey cannot even investigate unless he already has "proof" that Plaintiffs violated the law. But the whole point of investigation is to *obtain* proof.

This last error reveals a problem permeating the district court's opinion. Throughout, the district court held General Bailey to an impossibly high standard for initiating an investigation and drew all inferences against the Attorney General. That is the opposite of what the Supreme Court declared in *Alexander*, and it overlooks that the purpose of the CID procedure is to provide the Attorney General with investigative authority so he can determine whether to bring a complaint at all. *State ex rel. Ashcroft v. Goldberg*, 608 S.W.2d 385, 388 (Mo. banc

1980).  Here, General Bailey became concerned that Plaintiffs may have violated Missouri law based in part on the allegations in the *X Corp.* complaint.  After four months of investigation, he issued a CID to further the investigation.  That was wholly proper.

*Finally*, the district court characterized (at 34) General Bailey's enforcement of his CID as "unorthodox," and evidence of retaliatory intent, because he sought to enforce the CID at the same time it was issued.  But when the CID issued, Media Matters had already made clear that it would not comply with an investigation.  In fact, the Attorney General was right to believe Media Matters would fail to comply.  Media Matters violated the consumer protection law when it later failed to timely challenge the CID.

\* \* \*

In sum, the district court erred in finding that Plaintiffs established a likelihood of success on the merits because Plaintiffs did not engage in protected speech, did not establish a chill from the CID, and could not overcome the *Nieves* standard by proving that the CID was not issued on probable case.

**B. The district court erred in finding that Plaintiffs established irreparable harm, balance of the equities, and that the public interest favored preliminary relief.**

The district court addressed (at 37) the final three *Winter* factors "summarily," finding that any "loss of First Amendment freedoms … unquestionably constitutes irreparable injury," and then collapsing the balance of the equities and public interest factors back into the likelihood-of-success factor. This was error.

As discussed above, Plaintiffs have not identified any "chill" directly linked to the enforcement of the CID and "[i]t is well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012). (quotations omitted). As such, Plaintiffs have not established irreparable harm.

Separately, the district court was wrong to collapse the third and fourth factors into likelihood of success on the merits. *See Doe v. Harris*, 772 F.3d 563, 582–83 (9th Cir. 2014) ("Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, he must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of

equities and the public interest tip in his favor. We do not simply assume that these elements collapse into the merits of the First Amendment claim." (cleaned up)). Nevertheless, Plaintiffs have not met their burden of establishing these factors.

The balance of equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, General Bailey has a duty to the Missouri public to investigate whether Plaintiffs' actions violate Missouri law in that they were intentionally deceptive and defamatory. Yet, the district court has enjoined the Attorney General not only from enforcing the State's laws, but from even *investigating* whether they might have been broken, all while Plaintiffs had a full opportunity to challenge the CID enforcement action in state court. Worse, the court's order blocks a state court from exercising its lawful function. This extraordinary injunction is a significant injury to Missouri and its courts. This court should vacate the preliminary injunction.

## CONCLUSION

Attorney General Bailey respectfully requests that this Court vacate the district court's preliminary injunction and order the district court to abstain from jurisdiction over further proceedings.

December 10, 2024

Respectfully submitted,

**ANDREW T. BAILEY**,
Attorney General

/s/ *Joshua M. Divine*
Joshua M. Divine
  Solicitor General
Reed C. Dempsey
  *Deputy Solicitor General*
Office of the Attorney General
207 West High St.
Jefferson City, MO 65101
Phone: (573) 751-8870
Josh.Divine@ago.mo.gov
Reed.Dempsey@ago.mo.gov

*Counsel for Appellant-Defendant*
*Attorney General of Missouri*
*Andrew Bailey*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that Appellants' Brief complies with Federal Rule of Appellate Procedure 32(a)(7)(c), (f), and (g) in that it contains 12,783 words, as counted by the word-count feature of Microsoft Word 2016 used to produce this brief, excluding the parts exempted by Federal Rule of Appellate Procedure 32(1)(7)(B)(iii) and Circuit Rule 32(a)(1). This brief also complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1)(E), 32(a)(5) and (6) in that it was prepared in a 14-point serif font using a proportionally-spaced typeface.

*/s/ Joshua M. Divine*
Joshua M. Divine

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing brief was electronically filed on December 10, 2024, using the Court's CM/ECF system and that service was accomplished upon counsel of record by the Court's system.

*/s/ Joshua M. Divine*
Joshua M. Divine

# ADDENDUM


📖 **Code of the District of Columbia**

# § 13–421. Definition of person.

As used in this subchapter, the term "person" includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia.

(July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a).)

**Prior Codifications**

1981 Ed., § 13-421.

1973 Ed., § 13-421.

PUBLICATION INFORMATION

**Current through**
Nov. 22, 2024

**Last codified Emergency Law:**
Act 25-636 effective Nov. 22, 2024

**Last codified D.C. Law:**
Law 25-218 effective Sept. 18, 2024

**Last codified Federal Law:**
Public Law 115-334 approved Dec. 20, 2018

The codes and laws on this website are in the public domain.
Please do not scrape. Instead, bulk download the HTML [https://github.com/dccouncil/law-html] or XML [https://github.com/dccouncil/law-xml].
Powered by the non-profit Open Law Library [http://www.openlawlib.org/].

📖 **Code of the District of Columbia**

# § 13–423. Personal jurisdiction based upon conduct.

   **(a)** A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

   **(1)** transacting any business in the District of Columbia;

   **(2)** contracting to supply services in the District of Columbia;

   **(3)** causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

   **(4)** causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

   **(5)** having an interest in, using, or possessing real property in the District of Columbia;

   **(6)** contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

   **(7)** marital or parent and child relationship in the District of Columbia if:

      **(A)** the plaintiff resides in the District of Columbia at the time the suit is filed;

      **(B)** such person is personally served with process; and

**(C)** in the case of a claim arising from a marital relationship:

**(i)** the District of Columbia was the matrimonial domicile of the parties immediately prior to their separation, or

**(ii)** the cause of action to pay spousal support arose under the laws of the District of Columbia or under an agreement executed by the parties in the District of Columbia; or

**(D)** in the case of a claim affecting the parent and child relationship:

**(i)** the child was conceived in the District of Columbia and such person is the parent or alleged parent of the child;

**(ii)** the child resides in the District of Columbia as a result of the acts, directives, or approval of such person; or

**(iii)** such person has resided with the child in the District of Columbia.

**(E)** Notwithstanding the provisions of subparagraphs (A) through (D), the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction.

**(b)** When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

(July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a); Mar. 10, 1983, D.C. Law 4-200, § 4, 30 DCR 125.)

**Prior Codifications**

1981 Ed., § 13-423.

1973 Ed., § 13-423.

**Section References**

This section is referenced in § 48-804.02.

**Cross References**

Tortious injury in the District of Columbia, unfair trade practices, damages, see § 48-804.02.

PUBLICATION INFORMATION

**Current through**

Nov. 22, 2024

**Last codified Emergency Law:**

Act 25-636 effective Nov. 22, 2024

**Last codified D.C. Law:**

Law 25-218 effective Sept. 18, 2024

**Last codified Federal Law:**

Public Law 115-334 approved Dec. 20, 2018

The codes and laws on this website are in the public domain.
Please do not scrape. Instead, bulk download the HTML [https://github.com/dccouncil/law-html] or XML [https://github.com/dccouncil/law-xml].
Powered by the non-profit Open Law Library [http://www.openlawlib.org/].

**407.020.  Unlawful practices, penalty — exceptions. —** 1.  The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.  The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice.  Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

2.  Nothing contained in this section shall apply to:

(1)  The owner or publisher of any newspaper, magazine, publication or printed matter wherein such advertisement appears, or the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher or operator has no knowledge of the intent, design or purpose of the advertiser;

(2)  Any institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of commerce and insurance under chapter 354 or chapters 374 to 385, the director of the division of credit unions under chapter 370, or director of the division of finance under chapters 361 to 369, or chapter 371, unless such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute; or

(3)  Any advertisement, merchandise, or transaction in which the merchandise consists of a new residence in a transaction in which the buyer is offered and accepts in the sale contract an express warranty by the builder or through a third-party warranty company paid for by the builder and the sale contract contains substantially the following disclaimer in all capital letters with characters of at least ten-point type:  "THIS CONTRACT, MERCHANDISE AND PROPERTY CONVEYED UNDER THIS CONTRACT AND THE TRANSACTION BETWEEN THE SELLER AND BUYER IS

EXCLUDED FROM COVERAGE UNDER THE MERCHANDISING PRACTICES ACT, SECTIONS 407.010 TO 407.130, RSMO.".  As used in this section, the term **"residence"** shall mean a single-family house, duplex, triplex, quadruplex, or a unit in a multiunit residential structure in which title to each individual unit is transferred to the owner under a condominium or cooperative system and shall include common areas and common elements as defined in subdivision (4) of section 448.1-103.

3.  Any person who willfully and knowingly engages in any act, use, employment or practice declared to be unlawful by this section with the intent to defraud shall be guilty of a class E felony.

4.  It shall be the duty of each prosecuting attorney and circuit attorney in their respective jurisdictions to commence any criminal actions under this section, and the attorney general shall have concurrent original jurisdiction to commence such criminal actions throughout the state where such violations have occurred.

5.  It shall be an unlawful practice for any long-term care facility, as defined in section 192.2300, except a facility which is a residential care facility or an assisted living facility, as defined in section 198.006, which makes, either orally or in writing, representation to residents, prospective residents, their families or representatives regarding the quality of care provided, or systems or methods utilized for assurance or maintenance of standards of care to refuse to provide copies of documents which reflect the facility's evaluation of the quality of care, except that the facility may remove information that would allow identification of any resident.  If the facility is requested to provide any copies, a reasonable amount, as established by departmental rule, may be charged.

6.  Any long-term care facility, as defined in section 192.2300, which commits an unlawful practice under this section shall be liable for damages in a civil action of up to one thousand dollars for each violation, and attorney's fees and costs incurred by a prevailing plaintiff, as allowed by the circuit court.

--------

(L. 1967 p. 607 § 2, A.L. 1973 H.B. 55, A.L. 1985 H.B. 96, et al., A.L. 1986 S.B. 685, A.L. 1992 S.B. 705, A.L. 1994 H.B. 1165, A.L. 1995 H.B. 409, A.L. 2000 S.B. 763, A.L. 2008 S.B. 788, A.L. 2014 S.B. 491, A.L. 2020 S.B. 591)

CROSS REFERENCE:

Applicability of statute changes for cases filed after August 28, 2020, 510.262

---

**---- end of effective    28 Aug 2020 ----**

**use this link to bookmark section    407.020**

**- All versions**

| Effective | End |
| --- | --- |

| | | |
|---|---|---|
| **407.020** | 8/28/2020 | |
| **407.020** | 1/1/2017 | 8/28/2020 |
| **407.020** | 8/28/2008 | 1/1/2017 |
| **407.020** | 8/28/2000 | 8/28/2008 |
| **407.020** | 7/1/1965 | 7/1/1965 |

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**

In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section.



---

▶ **Other Information**

---

▶ **Other Links**

---

    

**Missouri Senate**   **MO.gov**   **Missouri House**

**Errors / suggestions -
WebMaster@LR.mo.gov**



**History and Fun Facts**

©Missouri Legislature, all rights reserved.

            

< > ● **Effective - 01 May 1986, 2 histories, see footnote** ⬇

**407.040. Investigations by attorney general — investigative demand, contents of, how served. —** 1. When it appears to the attorney general that a person has engaged in or is engaging in any method, act, use, practice or solicitation declared to be unlawful by this chapter or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in any such method, act, use, practice or solicitation, he may execute in writing and cause to be served upon any person who is believed to have information, documentary material, or physical evidence relevant to the alleged or suspected violation, a civil investigative demand requiring such person to appear and testify, or to produce relevant documentary material or physical evidence or examination, at such reasonable time and place as may be stated in the civil investigative demand, concerning the advertisement, sale or offering for sale of any goods or services or the conduct of any trade or commerce or the conduct of any solicitation that is the subject matter of the investigation. Service of any civil investigative demand, notice, or subpoena may be made by any person authorized by law to serve process or by any duly authorized employee of the attorney general.

2. Each civil investigative demand shall:

(1) State the statute and section thereof, the alleged violation of which is under investigation, and the general subject matter of the investigation;

(2) Describe the class or classes of information, documentary material, or physical evidence to be produced thereunder with reasonable specificity so as fairly to indicate the material demanded;

(3) Prescribe a return date by which the information, documentary material, or physical evidence is to be produced; and

(4) Identify the members of the attorney general's staff to whom the information, documentary material, or physical evidence requested is to be made available.

3. No civil investigative demand shall:

(1) Contain any requirement which would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of this state; or

(2) Require the disclosure of any documentary material which would be privileged or which, for any other reason, could not be required by a subpoena duces tecum issued by a court of this state.

4.  Service of any civil investigative demand, notice, or subpoena may be made by:

(1)  Delivering a duly executed copy thereof to the person to be served, or to a partner or any officer or agent authorized by appointment or by law to receive service of process on behalf of such person;

(2)  Delivering a duly executed copy thereof to the principal place of business or the residence in this state of the person to be served;

(3)  Mailing by registered or certified mail a duly executed copy thereof, addressed to the person to be served, at the principal place of business or the residence in this state or, if such person has no place of business or residence in this state, to his principal office or place of business or his residence; or

(4)  The mailing thereof by registered or certified mail, requesting a return receipt signed by the addressee only, to the last known place of business, residence or abode within or without this state of such person for whom the same is intended.

-------

(L. 1967 p. 607 § 4, A.L. 1973 H.B. 55, A.L. 1985 H.B. 96, et al., A.L. 1986 S.B. 685)

Effective 5-01-86

(1977) Held, this section not unconstitutional as a denial of due process, further an assertion that information requested would require disclosure of trade secrets is premature until attorney general attempts to present such information before a court. Lewandowski v. Danforth (Mo.), 547 S.W.2d 470.

(2001) Sale of motor fuel below cost in violation of the Motor Fuel Marketing Act is not an unfair practice within meaning of Merchandising Practices Act, and thus the Attorney General lacks authority to invoke civil investigative demand power.  Ports Petroleum Company, Inc. of Ohio v. Nixon, 37 S.W.3d 237 (Mo.banc).

---

**---- end of effective   01 May 1986 ----**

**use this link to bookmark section   407.040**

**- All versions**

| | Effective | End |
|---|---|---|
| **407.040** | 5/1/1986 | |
| **407.040** | 7/1/1965 | 7/1/1965 |

---

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**
In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section.



► **Other Information**

► **Other Links**



**Missouri Senate**     **MO.gov**     **Missouri House**

Errors / suggestions -
WebMaster@LR.mo.gov



**History and Fun Facts**

©Missouri Legislature, all rights reserved.

                    


**Title XXVI TRADE AND COMMERCE**

### Chapter 407 

< > ● **Effective - 01 May 1986, 2 histories, see footnote** ⬇

**407.070. Petition to extend return date, when and where filed. —** At any time before the return date specified in a civil investigative demand issued under section 407.040, or within twenty days after the civil investigative demand has been served, whichever period is shorter, a petition to extend the return date for, or to modify or set aside the civil investigative demand, stating good cause, may be filed in the circuit court of the county where the parties reside or in the circuit court of Cole County.

--------

(L. 1967 p. 607 § 7, A.L. 1973 H.B. 55, A.L. 1986 S.B. 685)

Effective 5-01-86

---

**---- end of effective   01 May 1986 ----**

**use this link to bookmark section   407.070** 

---

**- All versions**

| | Effective | End |
|---|---|---|
| **407.070** | 5/1/1986 | |
| **407.070** | 7/1/1965 | 7/1/1965 |

---

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**

In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section.

⬆

---

▶ **Other Information**

---

▶ **Other Links**

---


**Missouri Senate**


**MO.gov**


**Missouri House**

Errors / suggestions - WebMaster@LR.mo.gov



**History and Fun Facts**

©Missouri Legislature, all rights reserved.



 

 



< > ● **Effective - 01 May 1986, 2 histories, see footnote** ⬇

**407.080.  Interference with or avoidance of a civil investigative demand prohibited, penalty — attorney general to enforce. —** A person upon whom a civil investigative demand is served pursuant to the provisions of section 407.040 shall comply with the terms thereof unless otherwise provided by an order of a court.  Any person who, with intent to avoid, evade, or prevent compliance, in whole or in part, with any civil investigative demand issued under section 407.040, removes from any place, conceals, withholds, or destroys, mutilates, alters, or by any other means falsifies any information, documentary material, or physical evidence in the possession, custody or control of any person, which is the subject of any such civil investigative demand shall be guilty of a class A misdemeanor.  The attorney general shall have original jurisdiction to enforce the provisions of this section.

-------

(L. 1967 p. 607 § 8, A.L. 1973 H.B. 55, A.L. 1985 H.B. 96, et al., A.L. 1986 S.B. 685)

Effective 5-01-86

---

**---- end of effective   01 May 1986 ----**

**use this link to bookmark section   407.080** 

**- All versions**

|  | Effective | End |
|---|---|---|
| **407.080** | 5/1/1986 | |
| **407.080** | 7/1/1965 | 7/1/1965 |

---

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**

In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section. ⬆

---

► **Other Information**

---

► **Other Links**


**Missouri Senate**


**MO.gov**


**Missouri House**


**History and Fun Facts**

**Errors / suggestions -
WebMaster@LR.mo.gov**

©Missouri Legislature, all rights
reserved.












**Title XXVI TRADE AND COMMERCE**

**Chapter 407**

<  >  ●  **Effective - 31 May 1985, 2 histories, see footnote**  ⬇

**407.090.  Attorney general may request court order to produce evidentiary material — request filed where. —** Whenever any person fails to comply with any civil investigative demand duly served upon him under section 407.040 or whenever satisfactory copying or reproduction of any such material cannot be done and such person refuses to surrender such material, the attorney general, through such officers or attorneys as he may designate, may file, in the trial court of general jurisdiction of a county or judicial district in which such person resides, is found, or transacts business, and serve upon such person a petition for an order of such court for the enforcement of such civil investigative demand; except that, if such person transacts business in more than one county or judicial district such petition shall be filed in the county or judicial district in which such person maintains his principal place of business, or in such other county or judicial district as may be agreed upon by the parties to such petition.  Whenever any petition is filed in the trial court of general jurisdiction of a county or judicial district under this section, such court shall have jurisdiction to hear and determine the matter so presented, and to enter such order or orders as may be required to carry into effect the provisions of section 407.040.  Any final order so entered shall be subject to appeal to the state supreme court.  Any disobedience of any final order entered under this section by any court shall be punished as a contempt thereof.

--------

(L. 1967 p. 607 § 9, A.L. 1985 H.B. 96, et al.)

Effective 5-31-85

---

**---- end of effective   31 May 1985 ----**

**use this link to bookmark section   407.090**  📄

---

**- All versions**

| | Effective | End |
|---|---|---|
| **407.090** | 5/31/1985 | |
| **407.090** | 7/1/1965 | 7/1/1965 |

---

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**

In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section.



► **Other Information**

► **Other Links**



**Missouri Senate**     **MO.gov**     **Missouri House**

**Errors / suggestions -
WebMaster@LR.mo.gov**



**History and Fun Facts**

©Missouri Legislature, all rights reserved.

                                     

**407.100. Injunction — temporary restraining orders — receivers — restitution, when — civil penalty — venue — restitution funds payable to injured parties but interest payable to general revenue. —** 1.  Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, the attorney general may seek and obtain, in an action in a circuit court, an injunction prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof.

2.  In any action under subsection 1 of this section, and pursuant to the provisions of the Missouri Rules of Civil Procedure, the attorney general may seek and obtain temporary restraining orders, preliminary injunctions, temporary receivers, and the sequestering of any funds or accounts if the court finds that funds or property may be hidden or removed from the state or that such orders or injunctions are otherwise necessary.

3.  If the court finds that the person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, it may make such orders or judgments as may be necessary to prevent such person from employing or continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter.

4.  The court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter.  It shall be the duty of the attorney general to distribute such funds to those persons injured.  Such funds may or may not be interest-bearing accounts, but any interest which accrues to any such account shall be sent at least annually by the attorney general to the director of revenue to be deposited in the state treasury to the credit of the state general revenue fund.

5.  The court, in its discretion, may appoint a receiver to ensure the conformance to any orders issued under subsection 3 of this section or to ensure the payment of any damages

ordered under subsection 4 of this section.

6.  The court may award to the state a civil penalty of not more than one thousand dollars per violation; except that, if the person who would be liable for such penalty shows, by a preponderance of the evidence, that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed.

7.  Any action under this section may be brought in the county in which the defendant resides, in which the violation alleged to have been committed occurred, or in which the defendant has his principal place of business.

8.  The attorney general is authorized to enter into consent judgments or consent injunctions with or without admissions of violations of this chapter.  Violation of any such consent judgment or consent injunction shall be treated as a violation under section 407.110.

--------

(L. 1967 p. 607 § 10, A.L. 1973 H.B. 55, A.L. 1985 H.B. 96, et al., A.L. 1986 S.B. 685, A.L. 1994 H.B. 1461)

---

**---- end of effective    28 Aug 1994 ----**

**use this link to bookmark section    407.100** 

---

**- All versions**

| | Effective | End |
|---|---|---|
| **407.100** | 8/28/1994 | |
| **407.100** | 7/1/1965 | 7/1/1965 |

---

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**

In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section.

---

▶ **Other Information**

---

▶ **Other Links**

---


**Missouri Senate**


**MO.gov**


**Missouri House**

Errors / suggestions - WebMaster@LR.mo.gov



**History and Fun Facts**

©Missouri Legislature, all rights reserved.

    



**Chapter 407**

< > ● **Effective - 28 Aug 1988** ⬇

**407.456. Registration and reports, who shall file, exceptions. —** 1. Except for charitable organizations which are exempted under subsection 2 of this section, no charitable organization shall solicit funds in this state, nor employ a professional fund-raiser to solicit funds in this state, for any charitable purpose unless it, and each professional fund-raiser employed by it, have filed all registrations and reports required by sections 407.450 to 407.478.

2. The provisions of sections 407.459 and 407.462, and subsection 1 of section 407.469 shall not apply to the following:

(1) Religious organizations;

(2) Educational institutions and their authorized and related foundations;

(3) Fraternal, benevolent, social, educational, alumni, and historical organizations, and any auxiliaries associated with any of such organizations, when solicitation of contributions is confined to the membership of such organizations or auxiliaries;

(4) Hospitals and auxiliaries of hospitals, provided all fund-raising activities and solicitations of contributions are carried on by employees of the hospital or members of the auxiliary and not by any professional fund-raiser who is employed as an independent contractor;

(5) Any solicitation for funds governed by chapter 130; and

(6) Any organization that has obtained an exemption from the payment of federal income taxes as provided in section 501(c)(3), 501(c)(7) or 501(c)(8) of Title 26, United States Code, as amended, if, in fact, no part of the net earnings of the organization inure to the benefit of any private party or individual associated with such organization.

3. Sections 407.450 to 407.478 shall apply regardless of any contrary provisions contained in any contract, agreement, instrument or other document.

--------

(L. 1986 S.B. 685, A.L. 1988 H.B. 1760)

---

**---- end of effective   28 Aug 1988 ----**

use this link to bookmark section   407.456 

---

Click here for the **Reorganization Act of 1974 - or - Concurrent Resolutions Having Force & Effect of Law**

In accordance with Section **3.090**, the language of statutory sections enacted during a legislative session are updated and available on this website on the effective date of such enacted statutory section.



---

▶ **Other Information**

---

▶ **Other Links**

---



**Missouri Senate**    **MO.gov**    **Missouri House**

---



**Errors / suggestions -**
**WebMaster@LR.mo.gov**

**History and Fun Facts**

©Missouri Legislature, all rights reserved.

